UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| KIMBERLY A. RUSSO,<br><br>     Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,[1] Commissioner of Social Security,<br><br>     Defendant. | Case No. 2:18-cv-00033<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:    The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

Plaintiff Kimberly A. Russo filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. (Doc. No. 1.) Now before the Court is Russo's motion for judgment on the administrative record (Doc. No. 14), to which the Commissioner has responded in opposition (Doc. No. 16). Russo has filed a reply. (Doc. No. 17.) Having considered these filings and the administrative record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that Russo's motion be granted, that the ALJ's decision be reversed, and that this case be remanded for further administrative proceedings and rehearing consistent with this Report and Recommendation.

---

[1]    Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Under Federal Rule of Civil Procedure 25(d), he is automatically substituted as the defendant in this action. Fed. R. Civ. P. 25(d).

**I.     Background**

   **A.     Russo's Application for DIB**

Russo applied for DIB in April 2014 (AR 177–83[2]), alleging that she has been disabled and unable to work since April 15, 2010, as a result of, *inter alia*, back problems, bone spurs, knee pain, fibromyalgia, chronic obstructive pulmonary disease, allergies, dizziness, insomnia, sinus problems, night sweats, indigestion, plantar fasciitis, restless leg syndrome, strabismus, urinary incontinence, irritable bowel syndrome, incontinence, diverticulitis, confusion, depression and anxiety (AR 116, 118). The Commissioner denied Russo's application initially and on reconsideration. (AR 113–16, 120–21.) At Russo's request, an administrative law judge (ALJ) held a hearing on November 14, 2016. (AR 50–80, 124.) Russo appeared with a non-attorney representative and testified. (AR 56–75.) The ALJ also heard testimony from Jane Colvin-Roberson, a vocational expert. (AR 75–78.)

On February 15, 2017, the ALJ issued a written decision finding that Russo was not disabled within the meaning of the Social Security Act and applicable regulations and denying her claim for DIB. (AR 35–45.) Based on the record, the ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2016.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 15, 2010 through her date last insured of December 31, 2016 (20 CFR 404.1571 *et seq.*).

\*     \*     \*

---

[2]     The Transcript of the Administrative Record (Doc. No. 12) is referenced herein by the abbreviation "AR". All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

3. Through the date last insured, the claimant had the following severe impairments: disorders of the gastrointestinal system, spine disorders, and affective disorders (20 CFR 404.1520(c)).

      \*   \*   \*

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

      \*   \*   \*

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). She could lift fifty pounds occasionally and twenty-five pounds frequently. She could stand, sit, or walk for six of eight hours. The claimant is able to perform simple, low-level detailed and multi-step tasks with no more than occasional contact with coworkers, supervisors, and the public.

      \*   \*   \*

6. Through the date last insured, the claimant was capable of performing past relevant work as an egg packer and inspector. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

      \*   \*   \*

7. The claimant was born on February 2, 1963, and was 53 years old, which is defined as a younger individual, age 18–49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

      \*   \*   \*

10. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 15, 2010, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(f)).

(AR 37–44.)

Russo appealed the ALJ's decision to the Social Security Appeals Council. (AR 172–76.) In support of her appeal, Russo submitted additional medical records from Cumberland Medical Center, a letter from Dr. Luisa T. Manestar, and a signed residual functional capacity report from Dr. Elizabeth Simpson. (AR 2, 24, 25–30, 81–83, 172.) On February 14, 2018, the Appeals Council denied Russo's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 1–7.)

### B.  Appeal Under 42 U.S.C. § 405(g)

Russo filed this action for review of the ALJ's decision on April 19, 2018 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. § 405(g). Russo argues that the ALJ (1) failed to comply with SSA regulations in evaluating her gastrointestinal impairments; (2) violated the treating physician rule by failing to give good reasons for discounting Dr. Simpson's opinion; (3) failed to comply with SSA regulations in evaluating her fibromyalgia; and (4) that newly submitted material evidence justifies remand to the ALJ for consideration under sentence six of § 405(g). (Doc. No. 15.) The Commissioner responds that the ALJ's decision is supported by substantial evidence, that he followed all applicable regulations, and that remand under sentence six is not justified because the evidence Russo points to is not material. (Doc. No. 16.)

### C.  Review of the Administrative Record

The ALJ and the parties have thoroughly described and discussed the relevant medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## II. Legal Standard

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

### B. Determining Disability at the Administrative Level

Russo applied for DIB under Title II of the Social Security Act, which is an insurance program that "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). To receive DIB, Russo must establish that she had a disability on or before the last date she was eligible for insurance under Title II, which is determined based on her earnings record. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1);

5

20 C.F.R. § 404.130. "Disability" in this context is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §404.1520(a)(4). At step one, the ALJ considers the claimant's work activity. *Id.* § 404.1520(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the Social Security Administration that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. § 404.1520(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:17-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted by* 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [her] limitations.'" *Combs*, 459 F.3d at 643 (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. § 404.1520(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). If the claimant's residual functional capacity (RFC) permits her to perform past relevant work, she is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [her] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. § 404.1520(a)(4)(v).

**III.   Analysis**

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence, including determining whether the ALJ followed the proper legal standards in evaluating Russo's claims. *Miller*, 811 F.3d at 833. Because the ALJ failed to follow Social Security Ruling 16-3p and 20 C.F.R. § 404.1529(c) in evaluating Russo's gastrointestinal symptoms, as explained below, his decision is not supported by substantial evidence and should be reversed. *See Gentry*, 741 F.3d at 722 (explaining that an ALJ's failure to follow SSA rules and regulations denotes a lack of substantial evidence).

A. The ALJ's Evaluation of Russo's Gastrointestinal Symptoms

Russo argues that the ALJ failed to properly evaluate symptoms related to her gastrointestinal impairments because, despite finding that her gastrointestinal disorders were severe, the ALJ failed to include any related limitations in his RFC finding, such as a need for extra restroom breaks. (Doc. No. 15.) The Commissioner responds that the ALJ's RFC finding was supported by substantial evidence because objective medical evidence showed only mild impairment, Russo "had very little care for this complaint" since 2010, and Russo "did not appear to seek follow-up care from a gastroenterologist as [Dr. Manestar] suggested in 2014[.]" (Doc. No. 16, PageID# 741–42.)

SSA regulations require an ALJ determining disability to "consider all [of the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). The SSA has promised claimants that it "will not evaluate an individual's symptoms without making every reasonable effort to obtain a complete medical history unless the evidence supports a finding that the individual is disabled."[3] SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016); *see also* 20 C.F.R. § 404.1529(c)(2) (providing that the ALJ "must always attempt to obtain objective medical evidence and, when it is obtained, . . . consider it in reaching a conclusion as to whether [the claimant is] disabled"). Once those efforts have been made, a two-step evaluation process applies to claims of disabling symptoms. SSR 16-3p, 2016 WL 1119029, at *2; 20 C.F.R. § 404.1529(a).

---

[3] In this context, a "complete medical history" means the claimant's "complete medical history for at least the 12 months preceding the month in which he or she filed an application, unless there is a reason to believe that development of an earlier period is necessary or the individual says that his or her alleged disability began less than 12 months before he or she filed an application." SSR 16-3p, 2016 WL 1119029, *4 n.8 (Mar. 16, 2016).

First, the ALJ determines "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms . . . ." SSR 16-3p, 2016 WL 1119029, at *2; 20 C.F.R. § 404.1529(b). If the ALJ finds that such an impairment exists, he must then "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *2; 20 C.F.R. § 404.1529(c). The SSA "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." SSR 16-3p, 2016 WL 1119029, at *4. Consequently, the ALJ may "not reject [the claimant's] statements about the intensity and persistence of [her] . . . symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2). Other factors relevant to evaluating the intensity, persistence, and limiting effects of an individual's symptoms include daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; any measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to those symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c)(3)(i)–(vii).

Russo testified that symptoms related to her gastrointestinal disorders required her to use the restroom up to twenty times a day, which limited her ability to work. (AR 64–69.) She also testified that she had been seeing a specialist and trying different medications and diets to address her symptoms, to that point without success. (*Id.*) Applying the two-step framework above, the

9

ALJ found that step one was satisfied because Russo's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (AR 41.) At step two, however, the ALJ concluded that Russo's statements about the intensity, persistence, and limiting effects of her gastrointestinal symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) Specifically, the ALJ found that:

> [I]n May 2010, the claimant reported persistent nausea with copious amounts of diarrhea. She was treated as an outpatient. However, computed tomography (CT) showed only mild diverticulosis (Exhibit 2F). Luisa Manestar, M.D., assessed bowel abnormalities, rotating between diarrhea and constipation with a trial of Citrucel introduced (Exhibit 14F). The claimant indicated she could not work because of irritable bowel syndrome. However, Dr. Manestar encouraged the claimant to seek attention from a gastroenterologist who could maybe stabilize things (9F). There is no evidence from a gastroenterologist.

(*Id.*)

The ALJ thus implied that Russo failed to follow up with a gastroenterologist to address her symptoms, as recommended by Dr. Manestar—a finding on which the Commissioner relies in supporting the ALJ's decision. (*See* Doc. No. 16, PageID# 742 (arguing that, "as the ALJ noted, Plaintiff did not appear to seek follow-up care from a gastroenterologist as the doctor suggested in 2014").) But that finding lacks the support of substantial evidence. The ALJ asked Russo at the hearing if she was receiving treatment for diverticulosis and irritable bowel syndrome from a "specialist," and she confirmed that she was seeing a specialist once every three to six months. (AR 64.) The record also contains treatment notes from Dr. Manestar stating, in 2016, that Russo "sees Dr. Anbari" for her "abdominal issues[,]" including "[b]owel abnormalities, rotating between diarrhea and constipation[.]" (AR 621, 622.) Despite this substantial evidence that Russo did, in fact, follow up with a gastroenterologist, the ALJ evaluated her gastrointestinal symptoms without obtaining records or other information from Dr. Anbari or recognizing that Russo was under a specialist's care. The ALJ therefore failed to "mak[e] every reasonable effort to obtain a

complete medical history" before evaluating Russo's symptoms, in violation of Social Security Ruling 16-3p and 20 C.F.R. § 404.1529(c)(2). Moreover, it was "improper" for the ALJ to "rel[y] on the absence of [gastrointestinal] treatment to discredit Plaintiff's testimony . . . without attempting to further develop the record." *Threet v. Comm'r of Soc. Sec.*, No. 14-10291, 2015 WL 1510684, at *6 (E.D. Mich. Mar. 30, 2015). Indeed, even if Russo had not seen a gastroenterologist, the ALJ still had an affirmative obligation to "consider and address [any] reasons for not pursuing treatment that [were] pertinent to [Russo's] case" in evaluating her symptoms. SSR 16-p, 2016 WL 1119029, at *9. The ALJ did not do so.

The ALJ's failure to further develop the record before evaluating Russo's gastrointestinal symptoms and his improper reliance on Russo's purported failure to seek treatment from a gastroenterologist justify reversal and remand under sentence four of § 405(g). *See Miller*, 811 F.3d at 833 ("Where . . . an ALJ fails to follow [SSA] rules and regulations, we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" (quoting *Gentry*, 741 F.3d at 722)). The vocational expert specifically testified that there would be no jobs available in the national economy for an individual who, along with Russo's other RFC limitations, required more than the normal amount of breaks in a typical eight-hour workday or would miss three or four days a week due to gastrointestinal symptoms. (AR 77–78.) The ALJ's error was therefore not harmless.

On remand, the ALJ should make every reasonable effort to obtain a complete medical history before reevaluating Russo's gastrointestinal symptoms in accordance with Social Security Ruling 16-3p and 20 C.F.R. § 404.1529(c).

    **B.**    **Russo's Other Claims**

Russo argues, in the alternative, that new material evidence justifies a remand for reconsideration under sentence six of § 405(g). (Doc. No. 15.) This argument is moot because the

11

ALJ may consider new evidence on a sentence-four remand. *See Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *6 (S.D. Ohio. Dec. 13, 2016) ("When the Court decides to remand a case under 42 U.S.C. § 405(g), sentence four, that determination ordinarily moots a request for a sentence six remand." (citation omitted)); *see also Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 175 (6th Cir. 1994) (holding that "proceedings on remand [under sentence four] may require a rehearing in which additional evidence is introduced"). Similarly, because Russo's case should be remanded for further development of the record and reevaluation, the Court need not address Russo's remaining arguments that the ALJ failed to provide good reasons for discounting Dr. Simpson's opinion and failed to evaluate Russo's fibromyalgia in accordance with Social Security Ruling 12-2p. *See Hadi v. Comm'r of Soc. Sec.*, No. 3:16-cv-03014, 2018 WL 1788078, at *5 (M.D. Tenn. Mar. 27, 2018) (declining to address "challenges to the ALJ's treatment of other opinion evidence, the ALJ's credibility assessment, or the ALJ's obesity evaluation" where sentence-four remand was otherwise warranted), *report and recommendation adopted*, 2018 WL 1784658 (M.D. Tenn. Apr. 13, 2018); *Watson v. Comm'r of Soc. Sec.*, No. 2:16-cv-14355, 2018 WL 1404581, at *6 (E.D. Mich. Mar. 2, 2018) (declining to address "Plaintiff's remaining arguments as to the ALJ's treatment of opinion evidence . . . or the ALJ's consideration of Plaintiff's ability to stand and walk" where other "reversible error . . . require[d] remand and a re-evaluation of the RFC"), *report and recommendation adopted*, 2018 WL 1399341 (E.D. Mich. Mar. 19, 2018); *Maddex v. Astrue*, No. 3:10CV159, 2011 WL 1990588, at *13 (S.D. Ohio May 2, 2011) (declining to address Plaintiff's remaining arguments after finding "that the ALJ's decision should be reversed for failure to properly consider Plaintiff's obesity consistent with SSR 02–1p"), *report and recommendation adopted*, 2011 WL 1988537 (S.D. Ohio May 23, 2011).

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Russo's motion for judgment on the administrative record (Doc. No. 14) be GRANTED, that the ALJ's decision be REVERSED, and that the case be REMANDED for further administrative proceedings and rehearing consistent with this Report and Recommendation.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 26th day of August, 2019.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge